United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID DELGUIDICE,

        Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security of the United States
of America,

        Defendant.

_____/

No. C 08-3790 CW

ORDER DENYING
CROSS-MOTIONS FOR
SUMMARY JUDGMENT
AND REMANDING FOR
FURTHER
PROCEEDINGS

     Plaintiff David Delguidice has filed a motion for summary
judgment.  Defendant Michael J. Astrue, in his capacity as
Commissioner of the Social Security Administration, opposes this
motion and cross-moves for summary judgment.  Having considered all
of the papers filed by the parties, the Court DENIES the motions
for summary judgment and REMANDS for further proceedings.

BACKGROUND

I.   Procedural Background

     On October 28, 2004, Plaintiff applied for disability
insurance benefits under Title II of the Social Security Act and
for Supplemental Security Income (SSI) under Title XVI of the Act.
Plaintiff was determined to be disabled as of October 1, 2004 and
SSI benefits were awarded.  Title II benefits were denied because
the Social Security Administration determined that Plaintiff was

not disabled as of December 31, 2001, the date he was last insured for Title II benefits.  Plaintiff requested a reconsideration of the denial and, on reconsideration, Title II benefits were again denied.  Plaintiff then requested a hearing before an Administrative Law Judge.

On November 28, 2007, a hearing was held before an ALJ at which Plaintiff was represented by counsel.  On December 18, 2007, the ALJ issued an opinion finding that Plaintiff was not disabled as of December 31, 2001, and was able, as of that date, to return to his past relevant work.

On December 18, 2007, Plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  On June 7, 2008, the Appeals Council denied Plaintiff's request, rendering the ALJ's decision the final decision of the Commissioner of Social Security.

II.  Plaintiff's Education and Work Experience

Plaintiff was born on October 30, 1968.  He attended school through the eighth grade and worked at a number of jobs.  From November, 1998 to July, 1999 and from December, 1999 to January, 2000, Plaintiff worked as an electrician's helper for a construction company.  Since January 7, 2000, Plaintiff has not worked, except for two months at a furniture store in 2002, which the ALJ considered an unsuccessful work attempt.

III. Plaintiff's Medical History Through December, 2001

On November 15, 1994, at the age of twenty-five, Plaintiff was injured in a forklift accident when he was pinned against the forklift and the floor while working for Costco.  AR at 547.

United States District Court
For the Northern District of California

Plaintiff attests to gradually worsening pain in his neck, lower back, shoulders and hands since the accident.

Except where noted below, Plaintiff's medical record consists of clinic treatment records (primarily the walk-in clinic) from the Alameda County Medical Center, Fairmont Campus.

On April 1, 1996, Plaintiff complained of neck and back pain. (Administrative Record (AR) 248.)  Flexeril and Vicodin[1] were prescribed and the diagnosis was entered as "chronic pain syndrome."  (Id.)  On May 1, 1996, Plaintiff reported a migraine in his left temple area and chest pain.  (AR 244.)  Flexeril and Vicodin were prescribed.  (Id.)  On June 19, 1996, Plaintiff reported that physical therapy had helped relieve him of a "knot in sternal area" and that his headaches were so bad that Tylenol did not help.  (AR 245.)  Vicodin, Robaxin and Acetaminophen[2] were prescribed.  (AR 246.)

On June 21, 1996, Plaintiff had a physical therapy evaluation at Fairmont Hospital.  (AR 240.)  The record indicates that his back pain had flared up and he was stiff.  (Id.)  After sitting for a few minutes, his back was numb.  (Id.)  The cervical range of motion exam showed forty-five degrees of flex with increase in tightness, sixty degrees of extension with increase in neck pain, fifty degrees of left rotation with increase in pain and eighty degrees of right rotation with increase in pain.  (Id.)

---

[1] Flexeril is a muscle relaxant and Vicodin is a pain reliever.

[2] Robaxin is a muscle relaxant and Acetaminophen is a pain reliever.

3

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Examination revealed tenderness at the third and fourth ribs; lumbar pain at L1 and stiffness in L3-L5; pain and stiffness in the upper thoracic spine, especially at T5-T7; and cervical stiffness at C2 and C7-T1.  (AR 242.)  Plaintiff had four physical therapy sessions and was discharged from therapy after the final one on August 5, 1996.  (AR 243.)  The discharge notes stated that, given patient history, he would not benefit from further physical therapy.  (Id.)

On April 27, 1997, Plaintiff reported chest pain and was diagnosed with chronic chest wall pain.  (AR 239.)  Voltaren[3] and Robaxin were prescribed.  (Id.)  On May 6, 2000, Plaintiff reported low back pain radiating to his left thigh and leg.  (AR 237.)

On October 6, 2000, Plaintiff was seen by Dr. Calvin Pon for an orthopedic evaluation at Bay View Medical Clinic.  Plaintiff's chief complaints were neck pain, bilateral shoulder pain, and mid and low back pain.  On physical examination, Dr. Pon reported that Plaintiff complained of neck pain upon flexion, tenderness at the lateral and anterior aspect about the shoulders, and that there appeared to be a positive Tinel's sign[4] at the right wrist.  A sensory examination showed a subjective decrease in pinprick sensation in both hands.  Dr. Pon's report contained the following diagnostic impression:

> 1. Chronic neck pain, most likely musculoligamentous-soft tissue pain.  Possible cervical disc disease.  Claimant does have bilateral cervical radicular symptoms.  On today's physical examination there is no hard objective

---

[3] Voltaren is an anti-inflammatory drug.

[4] Tinel's sign is a method of detecting irritated nerves.

4

> evidence of a cervical nerve root impingement.  Claimant
> also complains of bilateral hand pain and numbness,
> possible carpal tunnel syndrome.
> 2. Chronic bilateral shoulder pain, most likely soft tissue
> pain.  Possible tendinitis, possible bursitis.
> 3. Chronic mid and low back pain, most likely
> musculoligamentous-soft tissue pain, possible thoracic
> lumbar disc disease.  Claimant does complain of occasional
> pain radiating down to his right thigh.  On today's
> physical examination there is no hard objective evidence
> of a right lumbosacral nerve root impingement.

(AR 178.)  Dr. Pon found that Plaintiff had the following

functional capacity:

> The claimant should be able to stand and/or walk for a total
> of 6 hours during an 8-hour workday.  He should be able to
> sit for a total of 6 hours during an 8-hour workday.
> Stooping should be limited to occasionally.  There is no
> restriction in crouching, kneeling, and squatting.  There is
> no restriction in climbing stairs.  Climbing ladders and
> crawling should be limited to occasionally.  He should avoid
> heavy pushing and pulling.  He is able to perform bilateral
> pushing and pulling, arm-hand control, however, there might
> be some symptomatic limitations because of his complaint of
> bilateral shoulder pain.  There is no restriction in
> performing bilateral pushing leg-foot control.  He should be
> able to lift and carry frequently up to 15 pounds and
> occasionally lift up to 25 pounds.  Reaching bilaterally
> should be limited to occasionally and there were some
> symptomatic limitations in active ROM of both shoulders as
> described.  There is no impairment in his ability to perform
> gross and fine manipulative tasks with both hands, however,
> because of his complaint of bilateral hand pain and numbness
> the level of function in both hands might be to some degree
> less than normal.

(Id.)

On January 31, 2001, in a new patient record for the Neurology

Clinic at the Alameda County Medical Center, Fairmont Campus,

Plaintiff reported trouble sleeping, numbness and constant pain in

his shoulder, elbow, fingers, neck and lower back.  (AR 223.)  He

was found to have a mild annular disk bulge and diffuse bodily pain

of unknown etiology.  (AR 224.)  The record noted "possible

psychosocial or disability causes -- such as malingering."  (Id.)

5

The signature on the record cannot be deciphered, but "MSIV" appears after the signature, indicating that Plaintiff was examined by a fourth-year medical student.  (Id.)

On September 17, 2001, Plaintiff reported bilateral wrist pain with tingling and numbness in both hands.  (AR 221-22.) Electromyography (EMG) indicated bilateral carpal tunnel syndrome, moderate on the left and severe on the right, with no evidence of cervical radiculopathy.  (AR 222.)

On February 2, 2006, Dr. Bruce E. Thompson, Board Certified Family Practitioner, evaluated Plaintiff for the purpose of social security disability benefits.  Dr. Thompson summarized Plaintiff's medical history as follows.

> [After the forklift accident], he continued to deteriorate and had continued pain and stiffness in the neck, mid back and low back and both shoulders.  He had radiating pain down the lower extremities, but otherwise, no significant radiculopathy.  He . . . continued to progress with the level of frequency and severity of neck, mid and low back and bilateral shoulder pain, stiffness . . .
>
> His medical history dates back for the last twelve years. He has been seen by multiple specialties, including neurology, orthopaedics and psychiatry.  He has multiple medical evaluations and neurodiagnostic tests of the cervical, thoracic, lumbar spine and both shoulders. He has had a left shoulder reconstruction and rotator cuff repair in September of 2005 . . . with significant improvement.  Apparently he is scheduled for a right shoulder arthroscopic rotator cuff repair in the near future.
>
> His symptoms include . . . insomnia and early morning awakening and chronic fatigue, difficulty focusing, difficulty with memory and a low dysphoric mood, with mood swings and inability to concentrate, recurrent headaches, with a decrease in his memory.  [He] has problems with activities of daily living, such as holding the phone, making the bed, putting up groceries, cleaning the house, or driving for over thirty minutes to an hour at a time.  He is unable to do any bending, stooping and

United States District Court
For the Northern District of California

> lifting, reaching, climbing, crawling or working in cramped spaces. He cannot do yard work or carry groceries.  He has general pain that is aggravated by activity in his entire spine and easy fatigue, which aggravates the pain.  He has associated headaches that are detailed as a bitemporal throbbing headache . . .

(AR 547-48).

After examining Plaintiff, Dr. Thompson's diagnosis was chronic pain syndrome, chronic bipolar depression, bilateral status post carpal tunnel syndrome with continued pain, bilateral shoulder pain, status post left shoulder rotator cuff repair and right rotator cuff tear.  (AR 551).

III. Plaintiff's Testimony

On November 28, 2007, at the hearing before the ALJ, Plaintiff testified that he worked as an electrician's helper in 1999 and described his typical day as follows:

> Basically, I would mark, they would run the wires and I would mark the wires with the numbers that's supposed to be called for and basically I would do a lot of cleanup.  As far as electrical work, the other guys that were knowledgeable did all the big industrial work because it was industrial electric work.  They would do all the industrial work, the heavy-duty work, and I would come back behind them and cleanup and what not.

(AR 23.)  The ALJ asked, "When you were doing this you were standing and walking, bending, stooping throughout the day, is that right?"  Plaintiff responded, "Somewhat, yes."  (AR 24.)

Plaintiff testified that he had attempted to go back to work in 2002 and had worked at a sofa center for two months.  (AR 25.) He testified that he had to leave because he "couldn't lift nothing up, not even 20 pounds.  It was just unbearable."  (Id.)

Plaintiff recalled that in 2001 he was unable to hold onto things he was carrying and that he would have to set them down.

7

United States District Court
For the Northern District of California

(AR 27.)  "I mean, even carrying, getting a gallon of milk out of the refrigerator even hurt.  My palms would hurt so bad it went all the way up my forearm, in the forearm, to my inner biceps and it just, it just totally hurt.  Pain from probably, it was eight."  (Id.)  He explained that he meant the pain was at the level of eight on a scale from one to ten.  (AR 28.)  The pain would come and go, starting gradually and increasing in intensity.  (Id.)  "It was off and on, good days and bad days."  (AR 29.)  He stated that the pain could be excruciating for hours, but could be off and on when he took pain pills.  (Id.)  Repetitious activities such as writing and doing his hair would cause pain.  (AR 30.)  Plaintiff finally sought treatment for his carpal tunnel syndrome because he "couldn't handle the pain no more."  (Id.)

Plaintiff testified that his shoulder problems began with the forklift accident on November 15, 1994.  (AR 32.)  He stated that, ever since that injury, his neck has been tight and "everything's been totally messed up."  (AR 33.)  He had been unable to work immediately after the accident and around the year 2000 his difficulties reached the point that he could not force himself to work.  (Id.)  Plaintiff confirmed that he would complain to his doctors that he had severe spasm and pain in his neck and that this pain was not unusual since the accident.  (AR 34.)

Plaintiff testified that in 2001 he lived with his wife and children.  (AR 37.)  He would start his day with stretches, to loosen up his body.  (Id.)  He reported that he would go to medical appointments and do some chores, but that if he was in pain, he would sit or lay on an ice pack.  (AR 37-38.)  He testified that he

might fold clothes or make a sandwich and that he didn't cook, but might put dishes in the dishwasher.  (AR 38.)  He explained that his parents or wife generally took him to medical appointments but that he did occasionally drive himself.  (AR 38-39.)  He testified that his hobby had been fixing show cars, but stated that he had stopped that activity "about 2000."  (AR 39.)  Plaintiff's children were fifteen to seventeen years old in 2001 and able to care for themselves and help around the house.[5]  (AR 43-44.)

A vocational expert, Steven Davis, also testified at the hearing before the ALJ.  Davis classified Plaintiff's past work as an electrician's helper as "semi-skilled at three, it's classified at medium and he indicates it was performed at light but on one of the exhibits it's indicated that it was performed at medium."  (AR 45.)  The ALJ asked Plaintiff to clarify whether, in his prior work, he had to lift weights that were above or below twenty pounds.  (AR 46.)  Plaintiff responded, "I could give or take around approximately 20 pounds or so . . . I can't be for sure exactly how much those things weighed."  (Id.)

IV.  The ALJ's Findings

In his decision, the ALJ found the following: (1) Plaintiff was insured for Title II Social Security benefits through December 31, 2001; (2) as of December 31, 2001, Plaintiff suffered from the impairments of bilateral carpal tunnel syndrome and mild

---

[5] There is a discrepancy in the record concerning Plaintiff's marital status, the ages of the children in 2001, and their relationship to Plaintiff.  On February 6, 2002, a physical therapist noted, "Pt lives with girlfriend. Spends day watching her children (4, 10, & 12 yo)."  (AR 212)

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

degenerative disc disease of the lumbar spine; (3) as of December 31, 2001, Plaintiff did not have an impairment or combination of impairments which met or equaled the impairments in the Commissioner's Listing of Impairments; (4) as of December 31, 2001, Plaintiff had the residual functional capacity to "perform sedentary and light work, as defined at 20 C.F.R. 404.1567(a) and (b), with occasional ladder climbing, crawling and stooping;"[6] and (5) for no twelve month period through December 31, 2001 had Plaintiff had an impairment or combination of impairments which precluded the performance of his past relevant work as an electrician's helper, described "at the hearing as involving minimal exertional activities." (AR 14.) The ALJ also stated, "The claimant's subjective statements regarding pain and other symptoms have been carefully considered, but to the extent that those statements constitute an allegation that the claimant was precluded from engaging in all substantial gainful activity by a medically determinable impairment or impairments through December 31, 2001, they are not found credible in light of the medical evidence and the claimant's statements and conduct." (Id.) As a result, the ALJ determined that Plaintiff "was not under a 'disability', within the meaning of the Social Security Act, prior to the expiration of his disability insured status on December 31,

---

[6]Sedentary work involves lifting no more than ten pounds at a time, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 416.967(a),(b) and (c).

10

1   2001."  (<u>Id.</u>)

2                    LEGAL STANDARD

3   I.   Overturning a Denial of Benefits

4        A court cannot set aside a denial of Social Security benefits

5   unless the ALJ's findings are based upon legal error or are not

6   supported by substantial evidence in the record as a whole.  42

7   U.S.C. § 405(g); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir.

8   1989); <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).

9   Substantial evidence is such relevant evidence as a reasonable mind

10  might accept as adequate to support a conclusion.  <u>Richardson v.</u>

11  <u>Perales</u>, 402 U.S. 389, 401 (1971); <u>Orteza v. Shalala</u>, 50 F.3d 748,

12  749 (9th Cir. 1995).  It is more than a scintilla but less than a

13  preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10

14  (9th Cir. 1975).

15       To determine whether substantial evidence exists to support

16  the ALJ's decision, a court reviews the record as a whole, not just

17  the evidence supporting the decision of the ALJ.  <u>Walker v.</u>

18  <u>Matthews</u>, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not

19  affirm the ALJ's decision simply by isolating a specific quantum of

20  supporting evidence.  <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir.

21  1989).  In short, a court must weigh the evidence that supports the

22  Commissioner's conclusions and that which does not.  <u>Martinez</u>, 807

23  F.2d at 772.

24       If there is substantial evidence to support the decision of

25  the ALJ, it is well-settled that the decision must be upheld even

26  when there is evidence on the other side, <u>Hall v. Secretary</u>, 602

27  F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is

28                              11

United States District Court
For the Northern District of California

susceptible to more than one rational interpretation, <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the ALJ as to any fact will be conclusive.  42 U.S.C. § 405(g); <u>Vidal v. Harris</u>, 637 F.2d 710, 712 (9th Cir. 1981).

II.  Establishing Disability Under the Social Security Act

Under the Social Security Act, "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A).  In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled within the meaning of the Social Security Act, the Social Security Regulations set out a five-step sequential process.  20 C.F.R. § 404.1520(b)-(f); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395 (9th Cir. 1991); <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998).  The burden of proof is on the claimant in steps one through four.  <u>Sanchez v. Secretary of Health and Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987).  In step one, the claimant must show that she or he is not currently

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).

In step two, the claimant must show that he or she has a "medically

severe impairment or combination of impairments" that significantly

limits his or her ability to work.  20 C.F.R. § 404.1520(c); Bowen

v. Yuckert, 482 U.S. 137, 140 (1987); Smolen v. Chater, 80 F.3d

1273, 1290 (9th Cir. 1996).  If the claimant does not, he or she is

not disabled.  Otherwise, the process continues to step three for a

determination of whether the impairment meets or equals a "listed"

impairment which the regulations acknowledge to be so severe as to

preclude substantial gainful activity.  Yuckert, 482 U.S. at 141;

20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.  If

this requirement is met, the claimant is conclusively presumed

disabled; if not, the evaluation proceeds to step four.  At step

four, it must be determined whether the claimant can still perform

"past relevant work."  Yuckert, 482 U.S. at 141; 20 C.F.R.

§ 404.1520(e).  If the claimant can perform such work, he or she is

not disabled.  If the claimant meets the burden of establishing an

inability to perform prior work, the burden of proof shifts to the

Commissioner for step five.  At step five, the Commissioner must

show that the claimant can perform other substantial gainful work

that exists in the national economy.  Yuckert, 482 U.S. at 141; 20

C.F.R. § 1520(f).

DISCUSSION

I.   Failure to Utilize the Services of a Medical Advisor

    The Social Security Administration found Plaintiff to be

disabled as of October 1, 2004 and, thus, eligible to receive SSI

benefits under Title XVI.  The issue before the ALJ was whether

13

Plaintiff was disabled prior to December 31, 2001, the date he was last insured for Title II benefits.  Plaintiff contends that Social Security Regulation (SSR) 83-20 and Ninth Circuit case law require the ALJ to secure the services of a medical advisor to establish the onset date for the disability and that the failure of the ALJ to do so in this case constitutes reversible error.

SSR 83-20 provides in relevant part that

> [i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. . . .  [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

> . . . .

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

The Ninth Circuit has held that "in this context 'should' means 'must.'"  <u>Armstrong v. Comm'r of the Soc. Sec. Admin.</u>, 160 F.3d 587, 590 (9th Cir. 1998).  In that case, Armstrong applied for Title II and SSI benefits on August 9, 1994, claiming to have been disabled in May, 1991.  <u>Id.</u> at 589.  The ALJ granted SSI benefits, finding that Armstrong had been disabled since August 9, 1994, but denied the application for Title II benefits, finding that he was not disabled prior to March 31, 1992, the last date he was insured.  <u>Id.</u>  The court noted that, although Armstrong had not been diagnosed until 1994, the record showed that he experienced deteriorating health problems for the last thirty years, but that

14

United States District Court
For the Northern District of California

it could not determined from the record when those impairments

became disabling.  <u>Id.</u> at 590.  Because of this, "the ALJ was

required to call a medical expert to aide [sic] in determining the

date of onset."  <u>Id.</u>  The Commissioner argued that the ALJ "did not

err in refusing to call a medical expert because Armstrong did not

fulfill his burden of proving that he was disabled prior to March

31, 1992."  <u>Id.</u>  The court rejected this argument:

> If, as the Commissioner, argues [sic] an ALJ does not have to
> call a medical expert unless the claimant has fulfilled his
> burden of proving an onset date, SSR 83-20 would have no
> application.  If the claimant proved a date, there would be
> no need to call a medical expert, and if the claimant, as in
> this case, was unable to prove a date, then the ALJ would
> deny disability benefits because the claimant failed to carry
> his burden.  We refuse to interpret the claimant's burden as
> eliminating SSR 83-20's requirement.

<u>Id.</u>; <u>see also</u> <u>Morgan v. Sullivan</u>, 945 F.2d 1079 (9th Cir. 1991) (if

medical evidence concerning onset date not definite and medical

inferences need to be made, ALJ must call upon services of medical

advisor).

Plaintiff, like Armstrong, applied for both Title II and SSI

benefits.  Like Armstrong, Plaintiff was found disabled as of the

date of his application and was granted SSI benefits but was found

not to have been disabled as of the date he was last insured and

was denied Title II benefits.  The record in Plaintiff's case, like

the record in <u>Armstrong</u>, demonstrates impairments prior to the date

last insured and it is difficult to determine, based on the record

alone, when the impairments became disabling.  Dr. Pons' October 6,

2000 report occurred over a year before the date Plaintiff was last

insured, and, therefore, is not determinative of whether Plaintiff

was disabled on the date last insured.  Furthermore, Dr. Thompson's

United States District Court
For the Northern District of California

February 6, 2006 summary of Plaintiff's medical history, which
noted that, after Plaintiff's accident, he experienced pain and
stiffness in his neck, back and shoulders, which continued to
increase over time, is evidence that Plaintiff may have been
disabled prior to the date he was last insured.

Defendant argues that SSR 83-20 only requires the ALJ to "call
on the services of a medical advisor when onset must be inferred"
and that there was no need to infer an onset date in Plaintiff's
case because the ALJ determined that there was no disability of any
kind at the relevant time.  This is another way of saying that
Plaintiff did not meet his burden of proof, the argument that the
court rejected in Armstrong.  Thus, as in Armstrong, the ALJ was
required to call a medical advisor to aid in determining the date
of onset.  Accordingly, the Court remands for the ALJ to call a
medical advisor to determine when Plaintiff became disabled.

II. Plaintiff's Credibility

Plaintiff argues that the ALJ rejected his testimony regarding
his pain and functional limitations without clear and convincing
reasons for doing so.

A. Legal Standard

In Cotton v. Bowen, 799 F.2d 1402, 1407-08 (9th Cir. 1986),
the Ninth Circuit developed a threshold test to determine the
credibility of a claimant's subjective symptom testimony.  Under
Cotton, a claimant "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  Bunnell v. Sullivan,
947 F.2d 341, 344 (9th Cir. 1991) (en banc) (quoting Cotton, 799

16

United States District Court
For the Northern District of California

1   F.2d at 1407-08); see also Smolen, 80 F.3d at 1282. Cotton

2   requires "only that the causal relationship be a reasonable

3   inference, not a medically proven phenomenon." Smolen, 80 F.3d at

4   1282. Therefore, a claimant is not required to produce objective

5   medical evidence of the pain itself or its severity. Id. (citing

6   Bunnell, 947 F.2d at 347-48). "It is improper as a matter of law

7   for an ALJ to discredit excess pain testimony solely on the ground

8   that it is not fully corroborated by objective medical findings."

9   Cotton, 799 F.2d at 1407; Fair v. Bowen, 885 F.2d 597, 601 (9th

10  Cir. 1989).

11       Once a claimant meets the Cotton test, "the Commissioner may

12  not discredit the claimant's testimony as to subjective symptoms

13  merely because they are unsupportable by objective evidence.

14  Unless there is affirmative evidence showing that the claimant is

15  malingering, the Commissioner's reason for rejecting the claimant's

16  testimony must be 'clear and convincing.'" Lester, 81 F.3d at 834

17  (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989));

18  Smolen, 80 F.3d at 1281. When outlining the findings supporting a

19  conclusion that a plaintiff's testimony is incredible, the ALJ must

20  consider "all of the available evidence" in analyzing the severity

21  of the claimed pain. SSR 88-13. Factors to be analyzed include:

22  (1) the nature, location, onset, duration, frequency, radiation,

23  and intensity of any pain; (2) precipitating and aggravating

24  factors; (3) type, dosage, effectiveness and adverse side effects

25  of any pain medications; (4) treatment, other than medication, for

26  relief of pain; (5) functional restrictions; and (6) the

27  plaintiff's daily activities. Id.; see Fair, 885 F.2d at 603

28

United States District Court
For the Northern District of California

(types of activities ALJ may rely on to find pain allegations not credible include the type of daily activities performed by plaintiff and whether plaintiff sought or followed treatment); Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (finding rejection of plaintiff's alleged pain justified where plaintiff had little evidence of spinal abnormalities, had not used strong pain medication, had not participated in pain management or physical therapy, and limited daily activities by choice not necessity). When pain is an issue, the plaintiff's demeanor at a hearing before the ALJ is not conclusive evidence of the plaintiff's credibility. Gallant, 753 F.2d at 1455.  However, medical evidence is still relevant in determining the severity of a plaintiff's alleged pain and its disabling effects.  20 C.F.R. § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

B. Analysis

In support of Plaintiff's subjective symptom testimony, including diffuse body pain, back pain, and severe pain in the hands and arms, he presented objective medical evidence of his physical impairments as required by the Cotton test.  This is confirmed by the ALJ's determination that "claimant suffered from medically determinable impairments, diagnosed as mild degenerative disc disease of the lumbar spine and bilateral carpal tunnel syndrome, . . . [that] significantly limited his ability to perform basic work activities . . . and must be deemed to have been 'severe' as of December 31, 2001."  (AR 11.)  Defendant does not dispute that the requirements of the Cotton test have been met. The single mention of malingering in the record is discussed below

and is not affirmative evidence of malingering.   Thus, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's subjective testimony about his symptoms.

The ALJ's reasons for rejecting Plaintiff's statements are as follows:

> First, I note that the claimant's medical records describe primarily routine, conservative outpatient care for his allegedly disabling symptoms through December 31, 2001.   In May 1996 the claimant's physician at Fairmont Hospital indicated that the claimant was exhibiting drug -- seeking behavior.   As noted, in January 2001, the claimant's neurologist noted that malingering in the absence of any explanation for the claimant's reported pain [sic].   I also note that in January, 2002, that is, in the month following the claimant's alleged disability onset date, he told his physical therapist at Fairmont Hospital that he was spending he is [sic] days watching his girlfriends [sic] three children and working on classic cars -- activities which undermine his allegations of an inability to perform all work as of December 31, 2001.

(AR 13.)

The ALJ's first reason for rejecting Plaintiff's statements was that he received primarily routine, conservative outpatient care.   The record shows that Plaintiff was diagnosed with chronic pain syndrome and that his doctors managed the pain with various pain medications.   Physical therapy was prescribed, but was discontinued after an evaluation that Plaintiff would not receive further benefit.   The ALJ does not explain why the care that Plaintiff received is inconsistent with Plaintiff's subjective testimony about his pain and the limitations this pain imposed. The ALJ seems to imply that if Plaintiff's testimony were true, he would have received a more aggressive level of care, but nothing in the record is cited to support this conclusion.

The ALJ next cites a notation of "drug seeking behavior" in a

19

walk-in clinic treatment record from May 1, 1996.  (AR 244.)  This is the only reference to such behavior in the record, which covers medical treatment over several years, and it was made before Plaintiff had been diagnosed with degenerative disc disease of the lumbar spine and carpal tunnel syndrome.  Furthermore, the issue is whether Plaintiff was disabled prior to December 31, 2001; what occurred in 1996 has little relevance to Plaintiff's condition in 2001.  Therefore, little weight can be attributed to this notation.

The third reason the ALJ provides for rejecting Plaintiff's statements is that a neurologist noted, in the absence of explanation for Plaintiff's pain, the possibility of "psychosocial or disability causes -- such as malingering."  (AR 224.)  The entry in the record was recorded not by a neurologist, but by a medical student.  (Id.)  The treatment record shows that Plaintiff was a "new patient" to the clinic.  (AR 223.)  Because of this and because the medical records document causes for Plaintiff's pain, the medical student's reference to malingering does not carry much weight.

Finally, the ALJ noted that in January, 2002, Plaintiff told his physical therapist that he spent his day watching his girlfriend's children and working on classic cars.  (AR 212.)  At the hearing, Plaintiff had testified that his hobby was show cars but that he had stopped working on them sometime in 2000.  (AR 39.)  In Reddick v. Chater, the court noted:

> Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.  See, e.g., Cohen [v. Secretary of Dept. of Health & Human Servs.], 964 F.2d 524, 530-31 (6th Cir. 1992)] (ruling that a claimant

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

> should not be penalized for attempting to maintain some sense
> of normalcy in her life); <u>Cooper v. Bowen</u>, 815 F.2d 557, 561
> (9th Cir. 1987) (noting that a disability claimant need not
> "vegetate in a dark room" in order to be deemed eligible for
> benefits).  <u>See also</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th
> Cir. 1989) ("Many home activities are not easily transferable
> to . . . the more grueling environment of the workplace,
> where it might be impossible to periodically rest or take
> medication.").  Only if the level of activity were
> inconsistent with Claimant's claimed limitations would these
> activities have any bearing on Claimant's credibility.

157 F.3d 715, 722 (9th Cir. 1998).  Even if Plaintiff worked on

show cars at times through 2001, the ALJ does not explain why this

activity, along with the activity of watching his girlfriend's

children, was inconsistent with Plaintiff's subjective testimony

about his pain and the limitations this pain imposed.  As <u>Reddick</u>

makes clear, it is the level of activity and not the activities

themselves that might bear on Plaintiff's credibility.

        The four factors provided by the ALJ, individually and

collectively, are not clear and convincing reasons for rejecting

Plaintiff's testimony about his symptoms.  Accordingly, the Court

remands for the ALJ to give credit to Plaintiff's testimony about

his symptoms, or to provide clear and convincing reasons for not

doing so.

III. Failure Properly to Assess Residual Functional Capacity (RFC)

        The ALJ found that through December 31, 2001, Plaintiff "had

the residual functional capacity to perform sedentary and light

work, as defined at 20 C.F.R. [§§] 404.1567(a) and (b), with

occasional ladder climbing, crawling and stooping."  (AR 14.)

Because the assessment of Plaintiff's RFC was made after the ALJ

had rejected Plaintiff's subjective testimony concerning his

symptoms, the ALJ must reassess the RFC on remand, unless the ALJ

provides clear and convincing reasons for again rejecting Plaintiff's testimony.

Plaintiff also contends that the ALJ's assessment of his RFC did not properly account for Dr. Pon's findings from his examination of Plaintiff on October 6, 2000. In his assessment of Plaintiff's functional capacity, Dr. Pon wrote, "Reaching bilaterally should be limited to occasionally . . . There is no impairment in his ability to perform gross and fine manipulative tasks with both hands, however, because of his complaint of bilateral hand pain and numbness the level of function in both of his hands might be to some degree less than normal." (AR 178.) Plaintiff contends that the ALJ's RFC assessment should have included the reaching and manipulative limitations noted by Dr. Pon. However, Dr. Pon's finding was that there was no impairment in manipulative ability. It was not error for the ALJ to omit these limitations in the assessment of the RFC.

IV. Failure to Classify Accurately Plaintiff's Past Work

In his decision, the ALJ wrote:

> I thus find, taking into consideration all of the evidence of record, including the claimant's allegations of pain and other symptoms that the claimant was able to perform sedentary and light work with occasional ladder climbing, crawling and stooping through December 31, 2001. At the hearing vocational expert Stephen Davis testified that the claimant's past work as an electrician's helper as defined in the Dictionary of Occupational Titles (#189-684.022) as a semi-skilled medium work. [sic] However, in accordance with Social Security Ruling 82-61, a finding of non-disability at Step 4 is appropriate if the claimant can perform his or her work as generally performed in the national economy or as performed by the claimant. In this case, as noted by the vocational expert, the claimant actually performed his past work as an electrician's helper at the light exertional level. I accept the testimony of the vocational expert and find that the claimant was "not disabled" through December

United States District Court
For the Northern District of California

1      31, 2001.

2   (AR 13.)

3      At the hearing, Plaintiff testified that, at his last job as

4   an electrician's helper, he lifted "between maybe ten and twenty

5   pounds, tops."  (AR 25.)  When questioned by the ALJ, the

6   vocational expert stated that Plaintiff's past work was "classified

7   at medium and he indicates it was performed at light but on one of

8   the exhibits it's indicated that it was performed at medium."  (AR

9   45.)  The ALJ then questioned Plaintiff concerning the exertional

10  level at which he performed his work:

11      ALJ:  What Mr. Davis indicated that in the record when you
        completed your forms you indicated that you were lifting and
12      carrying weights in excess of 20 pounds, somewhere between 20
        to 50 pounds, and then today you indicated that you were
13      doing substantially lighter than that.  So, just try to think
        back to that period of time.  What do you think is more
14      accurate?  Do you think that you were lifting weights
        actually up to 20 pounds or was it beyond 20 pounds?
15
        CLMT:  I could give or take around approximately 20 pounds or
16      so.

17      ALJ:  So, it's in that area but you're not exactly sure?

18      CLMT:  Correct.  I --

19      ALJ:  Okay.

20      CLMT:  I can't be for sure exactly how much those things
        weighed.
21
22  (AR 46.)

23      The ALJ found that as of December 31, 2001, Plaintiff had the

24  RFC to perform light work which, as defined by 20 C.F.R. Section

25  404.1567(b), requires lifting no more than twenty pounds at a time

26  with frequent lifting or carrying of objects weighing up to ten

27  pounds.  The ALJ also found that Plaintiff could do his past

28
                                  23

**United States District Court**
For the Northern District of California

relevant work as he had performed it because he testified that he lifted and carried no more than twenty pounds.  Plaintiff argues that his testimony about the weights he lifted and carried at his last job was equivocal, and he was doing his job at the medium level as the vocational expert stated it is normally classified.  Thus, Plaintiff claims, the ALJ erred in concluding Plaintiff could do his past relevant work.

Plaintiff first testified, without hesitation, that he lifted and carried no more than twenty pounds at his last job.  When the ALJ asked him to confirm this, his reply that he could "give or take approximately 20 pounds or so" could be interpreted as supporting his earlier statement that he lifted and carried up to twenty pounds.  These two statements are substantial evidence that support the ALJ's conclusion that the job, as Plaintiff performed it, involved light exertional activities.  The ALJ did not err in his classification of Plaintiff's last work.

V.   Remand for Reconsideration

Plaintiff's complaint asks the Court to reverse the ALJ's decision and find that Plaintiff was disabled within the meaning of the Social Security Act as of December 31, 2001, or, in the alternative, to remand his case for further administrative proceedings.

The Court has discretion to remand the case for further administrative proceedings or to award payment of benefits.  <u>Swenson</u>, 876 F.2d at 689.  An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings or when the record has been fully developed and there

24

United States District Court
For the Northern District of California

is insufficient evidence to support the ALJ's conclusion. Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).  Where remand would only delay the receipt of benefits, judgment for the plaintiff is appropriate.  Id.  However, remand for further proceedings is appropriate where additional proceedings could remedy defects.  Id.

Here, remand is the appropriate remedy.  The Court does not find that the ALJ's conclusion was necessarily erroneous.  However, the Court finds that a medical advisor is necessary to determine the onset date of Plaintiff's disability.  The ALJ should also re-assess his determination of Plaintiff's credibility and if he finds Plaintiff credible, re-assess his RFC.

CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's and Defendant's motions for summary judgment and REMANDS to the Commissioner for further proceedings.  Judgment shall enter accordingly.  Both parties shall bear their own costs.

IT IS SO ORDERED.


Dated: December 1, 2009                    _____
                                           CLAUDIA WILKEN
                                           United States District Judge